UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE CELLULAR TELEPHONES ASSIGNED CALL NUMBERS (346) 348-8479 AND (978) 828-4247 | No. 20-mj- 188-01/02-AJ<br><br>**[UNDER SEAL]** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Task Force Officer Joseph DeWitt, being duly sworn, depose and state as follows:

## I.    PURPOSE OF THE AFFIDAVIT

1.      I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number (978) 828-4247 ("**TT-6**"), used by Manuel Emilio Delacruz-Diaz ("DELACRUZ-DIAZ"), with subscriber name Cristobal Emilio Ramirez Cruz and a listed address of 340 Lowell Street, Lawrence, Massachusetts, and cellular telephone assigned call number (346) 348-8479 ("**TT-7**"), used by Francisco Valdez-Aybar ("VALDEZ-AYBAR") with no listed subscriber name or address.  Service is provided for both **TT-6** and **TT-7** by T-Mobile USA, a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, New Jersey. **TT-6** and **TT-7** are described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B. As described more fully in Attachment B, this application requests data about the physical location of **TT-6** and **TT-7**

including but not limited to E-911 Phase II data (or the specific latitude and longitude or other precise location information) for a period of thirty (30) days.

## **AGENT BACKGROUND**

2.      I am a police officer employed by the Nashua Police Department (NPD) since 2009. In September 2018, I transferred to NPD's Narcotics Intelligence Division, where I conducted investigations into narcotics-related offenses. Since September 2019, I have served as a Task Force Officer (TFO) to the Drug Enforcement Administration (DEA) Strike Force, Manchester, New Hampshire District Office. I have attended narcotics and criminal investigation training classes put on by the New Hampshire Police Standards and Training Council, the DEA, the Northeast Counterdrug Training Center, as well as by the NPD.

3.      As a DEA TFO, I am authorized to investigate violations of the laws of the United States, including violations of the federal drug laws and money laundering laws in Title 21 and Title 18, respectively, of the United States Code. I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant.

4.      Through my training, education, and experience, I have become generally familiar with the manner in which drug trafficking organizations ("DTOs") conduct their illegal activities, including purchasing, manufacturing, storing, and distributing narcotics, the laundering of illegal proceeds, and the

efforts of persons involved in such activity to avoid detection by law enforcement. I have participated in the execution of numerous search warrants resulting in the seizure of large quantities of controlled substances and paraphernalia involved in the manufacture and distribution of controlled substances; United States currency, records of narcotics and monetary transactions, drug customer lists and other documents relating to the manufacturing, transportation, ordering, purchasing and distribution of controlled substances, as well as the collection, expenditure, accounting, transportation, and laundering of drug proceeds. I have participated in the debriefing of numerous defendants, informants and witnesses who had personal knowledge regarding large-scale narcotics trafficking organizations. I have participated in all aspects of drug investigations including conducting surveillance, executing searches pursuant to court-ordered search warrants, executing arrests, and participating in court-authorized Title III wiretaps of cellular phones. .

## BASIS OF INFORMATION

5.      I make this affidavit based upon personal knowledge derived from my participation in this investigation and upon information I believe to be reliable from the following sources:

   a.  my experience investigating drug-trafficking offenses;

   b.  oral and written reports and documents about this investigation that I have received from members of the DEA, local law enforcement, and other federal law enforcement agencies;

   c.  discussions I have had personally concerning this investigation

with experienced narcotics investigators;

   d.  physical and fixed camera surveillance conducted by the DEA and local law enforcement agencies, the results of which have been reported to me either directly or indirectly;

   e.  public records and law enforcement databases;

   f.  Title III intercepts of wire and electronic communication;

   g.  telephone toll records, pen register and trap and trace information, and telephone subscriber information;

   h.  geolocation information; and

   i.  conclusions based on interpretations of conversations and text messages intercepted pursuant to court-authorized interception of wire and/or electronic communications made by me and other experienced law enforcement agents.

6.    Unless otherwise indicated, the statements contained herein are summaries of information that I have received from other law enforcement officers, and I specifically relied on oral reports from other law enforcement officers and Spanish-language interpreters.  When information is based on my personal knowledge or conclusion, it will be so stated.

7.    Conversations and discussions below are set forth in substance only unless noted otherwise. Dates, times, and amounts are approximate. Because many conversations discussed below occurred in Spanish, I have included preliminary translations provided to me by agents or interpreters fluent in both English and

Spanish. Any statements excerpted from intercepted communications, including those that are translated and quoted herein, are subject to further revision.

8.     Since this affidavit is being submitted for the limited purpose of establishing that probable cause exists to support the issuance of a search warrant, I have not included details about every aspect of the investigation. While this affidavit contains all the material information I am aware of that is pertinent to the requested search warrant, it does not set forth all of my knowledge about this matter.

9.     Based on the facts set forth in this affidavit, I submit that there is probable cause to believe, and I do believe, that 21 U.S.C. § 841 (distribution of controlled substances and possession with intent to distribute controlled substances), 21 U.S.C. § 846 (conspiracy to distribute and possess with intent to distribute controlled substances), and 21 U.S.C. § 843(b) (unlawful use of a communication facility) have been committed, are being committed, and will be committed by DELACRUZ-DIAZ, VALDEZ-AYBAR, and others known and unknown. I submit that there is also probable cause to believe, and I do believe, that the location information described in Attachment B will constitute evidence of these criminal violations and will lead to the identification of individuals who are engaged in the commission of these offenses.

## II.     **PROBABLE CAUSE**

10.     Since the spring of 2019, the DEA has been conducting an investigation of a drug trafficking organization (DTO) led by Luis ARAUJO-

GUERRERO.  In furtherance of this investigation, on March 13, 2020, District Court Judge Paul J. Barbadoro, District of New Hampshire, authorized Title III interceptions of two telephones held by ARAUJO-GUERRERO.  Based upon information obtained from a variety of sources, including confidential sources, cell phone location information, physical surveillance, and the Title III intercepts, agents learned that ARAUJO-GUERRERO was being supplied narcotics by VALDEZ-AYBAR, as well as by his brother, Santo Araujo-Guerrero Jr. a.k.a. Belky ("BELKY").

11.     On August 25, 2020, District Court Judge Paul J. Barbadoro, District of New Hampshire, authorized Title III interceptions of  telephones held by VALDEZ-AYBAR and BELKY.  During this interception period, agents identified DELACRUZ-DIAZ as a source of drug supply for VALDEZ-AYBAR, and agents later learned that **TT-6** was a telephone that was being used by DELACRUZ-DIAZ. Agents also intercepted several conversations between BELKY and VALDEZ-AYBAR, and through these conversations identified **TT-7** as a telephone used by VALDEZ-AYBAR to coordinate drug purchases.

12.     On October 20, 2020, District Court Judge Paul J. Barbadoro, District of New Hampshire, authorized Title III interceptions of **TT-6** and **TT-7**, and agents are currently intercepting wire and electronic communications on the two numbers for a 30-day period.  To date, agents have intercepted numerous conversations related to drug trafficking on **TT-6** and **TT-7**.

13.     For example, on October 21, 2020, at approximately 9:35 a.m., in

Session 34, DELACRUZ-DIAZ made an outgoing call on **TT-6** to (978) 483-9034, and spoke with an unknown Spanish speaking male (UM9034). The following is an English translation of their Spanish-language conversation:

| | |
|---|---|
| **UM9034**: | Hello. |
| **DELACRUZ**: | What's up? |
| **UM9034**: | Talk to me. |
| **DELACRUZ**: | Have everything ready, okay? |
| **UM9034**: | Okay. |
| **DELACRUZ**: | I am going to pick (ph) that up, okay? |
| **UM9034**: | Yes. |
| **DELACRUZ:** | Okay…. |

14.     Directly following this call, at 9:37 a.m., in Session 35, DELACRUZ-DIAZ made an outgoing call over **TT-6** to (978) 242-5801, and spoke with an unknown Spanish speaking female (UF5801). During this call, DELACRUZ-DIAZ told UF5801 that he needed a ride, and UF5801 told DELACRUZ-DIAZ she would pick him up after she showered.

15.     After ending the call with UF5801, at 9:41 a.m., in Session 36, DELACRUZ-DIAZ received an incoming call from UM9034, and had the following conversation:

| | |
|---|---|
| **DELACRUZ**: | Talk to me sonny. |
| **UM9034**: | I don't have "pulgas" (ticks) here or smalls. |
| **DELACRUZ**: | Alright I am in my house, I will get them for you. I will call the cab to come get me. |
| **UM9034**: | Alright. |
| **DELACRUZ**: | Okay. |

Based on this series of conversations, I believe that when DELACRUZ-DIAZ told

UM9034 "I am going to pick (ph) that up, okay?" DELACRUZ-DIAZ was telling

UM9034 that he was going to pick up a quantity of drugs.  I believe that

DELACRUZ-DIAZ then coordinated a ride with UF5801 to pick up the drugs, and

then called UM9034 again to tell him that he was leaving shortly.  During this

conversation, UM9034 told DELACRUZ-DIAZ, "I don't have "pulgas" (ticks) here or

smalls," which I believe was a reference to a quantity of drugs that UM9034 sells.  I

believe that after this statement by UM9034, DELACRUZ-DIAZ agreed to get the

quantity of drugs for UM9034.

   16.   Shortly following the above call, at 9:48 a.m., Session 37, DELACRUZ-

DIAZ received an incoming call on TT-6 from UM9034, and had the following

conversation:

| | |
|---|---|
| **DELACRUZ**: | Talk to me. |
| **UM9034**: | You know, when you…hide [Ph] that so you don't come with anything on hand, okay? |
| **DELACRUZ**: | I know, hide that. I know. |

Based on this conversation, I believe that UM9034 called DELACRUZ-DIAZ, and

told him to hide the drugs, so that he would not have the drugs in his hand when he

arrived at UM9034's location.  I believe DELACRUZ-DIAZ acknowledged this, and

told UM9034 he knew to hide the drugs.

   17.   At approximately 10:04 a.m., Session 38, DELACRUZ-DIAZ made an

outgoing call to UF5801, and UF5801 told him that she was almost to his location.

At approximately 10:10 a.m., I was conducting fixed camera surveillance of 344

Lowell Street, and observed DELACRUZ-DIAZ exit the driveway, get into a blue

Honda Odyssey van and drive from the area.  At around this same time,

DELACRUZ-DIAZ again spoke with UM9034 and told him he was in a taxi and would be there soon.  Based on these conversations and observations, I believe that DELACRUZ-DIAZ left 344 Lowell Street, and travelled to UM9034's location to supply him with drugs.

18.    At approximately 10:22 a.m., Session 40, DELACRUZ-DIAZ made an outgoing call to UM9034, and told UM9034, "I am almost there, have everything ready to fix now."  UM9034 acknowledged, and DELACRUZ-DIAZ then told him, "The rest [ph], okay?"  UM9034 then told DELACRUZ-DIAZ, "Alright.  Everything is ready already."  Based on this conversation, I believe DELACRUZ-DIAZ told UM9034 that he was almost to his location, and that UM9034 needed to get things ready to "fix".  I believe that DELACRUZ-DIAZ was telling UM9034 to get things ready, so that the drugs could be mixed with diluents.

19.    As a further example, on October 21, 2020 at approximately 5:10 p.m., Session 124, DELACRUZ-DIAZ received an incoming call on **TT-6** from (978) 566-4234, and spoke with an unknown Spanish speaking male (UM4234).  The two had the following conversation:

| | |
|---|---|
| **DELACRUZ**: | What's up? |
| **UM4234**: | I have the 4.5 of the 10 that you passed out. |
| **DELACRUZ**: | You have them? |
| **UM4234**: | Yes, the 4.5 of the 10 that I grabbed from you yesterday. |
| **DELACRUZ**: | Oh, do you want anything? |
| **UM4234**: | Uhm, I have some there but I am waiting to finish, so you get me?  So, I order the rest or if you want, bring me the rest, whatever you want. |

| | |
|---|---|
| **DELACRUZ:** | So, I am going to bring it to you. You heard? |
| **UM4234**: | What time? |
| **DELACRUZ:** | I am calling the taxi, now.  Wait for me. Wait for me. |
| **UM4234**: | I'm heading there, it is alright. |
| **DELACRUZ:** | Oh, you are there? |
| **UM4234**: | No, to the house. No, I am not there, no. |
| **DELACRUZ:** | Alright, head then to the house. |
| **UM4234**: | Alright |
| **DELACRUZ**: | Alright. |

Based on this conversation, I believe that when UM4234 told DELACRUZ-DIAZ, "I have the 4.5 of the 10 that you passed out," UM4234 was telling DELACRUZ-DIAZ that he had sold some of the drugs that DELACRUZ-DIAZ had provided him with, but still had 4.5 units left.  I believe that DELACRUZ-DIAZ then asked UM4234 if he wanted more product, and UM4234 explained that he had not sold  all of the drugs that he had, but would let DELACRUZ-DIAZ decide if he wanted to bring him more product.  Later in the evening at 6:00 p.m., Session 129, DELACRUZ-DIAZ called UM4234, and told UM4234 that he was "almost there."  Based on this conversation, I believe that DELACRUZ-DIAZ delivered more drugs to UM4234.

20.     Through intercepted calls over **TT-7** agents have also confirmed that VALDEZ-AYBAR is using **TT-7** for drug trafficking.  As an example, on October 21, 2020 at approximately 10:40 p.m., Session 25, VALDEZ-AYBAR received an incoming call from (207) 888-7491, and spoke with an unknown Spanish speaking male (UM7491).  The two had a conversation about an unknown third party who was apparently arrested by police, but the call abruptly ended.  At approximately

10:45 p.m., Session 26, VALDEZ-AYBAR made an outgoing call on **TT-7** to

UM7491.  The two continued to talk about the arrest, and VALDEZ-AYBAR then

began giving advice to UM7491 regarding his meeting with drug customers.  This

portion of the conversation was as follows:

| | |
|---|---|
| **VALDEZ**: | Be careful.  I am going to bring you…. When we see each other... When are you seeing people?  I am going to bring you to a place. You won't have to worry, and you will thank me later.  You will never get pulled over, nobody will ever know. |
| **UM7491**: | Man. Okay then, no problem. |
| **VALDEZ**: | It's on a hill [ph]. You go in through one street, they come in through another and you Nobody sees you, no one notices that's all. |
| **UM7491**: | Okay man. Okay. |
| **VALDEZ**: | You stick with me, I take care of you. I have 10 years here, I can guide you through everything. |
| **UM7491**: | Alright, alright, show it to me. |
| **VALDEZ**: | Okay. |
| **UM7491**: | Yes, okay. |
| **VALDEZ**: | On Everett (street), where [U/I] there is a small park and a basketball court. [System Malfunction] I will show you, by Ferbur [ph] over there near where the car wash is. Going straight almost by the Beacons. |
| **UM7491**: | Okay, you tell.... Because I am by Beacon. |
| **VALDEZ**: | You are close, does.... Andover cross by there? |
| **UM4234**: | Exactly, I am on Beacon Street. |
| **VALDEZ**: | Oh, so you are really close. You can come on foot. |
| **UM4234**: | I am over here, okay. Alright then. |
| **VALDEZ**: | Okay**.** |

| | |
|---|---|
| **UM4234**: | Okay. |

Based on this conversation, I believe VALDEZ-AYBAR was explaining to UM4234 how to meet with drug customers without getting caught by law enforcement. I believe that when VALDEZ-AYBAR said, "I have 10 years here, I can guide you through everything," he was telling UM4234 that he has been selling drugs for 10 years and can teach him how to sell drugs without getting caught.

21.     As a further example of **TT-7** being used for drug trafficking, on October 22, 2020, at approximately 2:11 p.m., Session 29, VALDEZ-AYBAR received an incoming call on **TT-7** from (978) 566-6238, and spoke with an unknown Spanish speaking male (UM6238). The two had the following conversation:

| | |
|---|---|
| **UM6238**: | Where are you ? To hand you a little something. |
| **VALDEZ**: | I am at the house. |
| **UM6238**: | Shit. |
| **VALDEZ**: | Where are you in the south? |
| **UM6238**: | No, I am up here. It was to see if I could go by there now. |
| **VALDEZ**: | Well, would you be able to come by a little later? |
| **UM6238**: | Alright, no problem. |
| **VALDEZ**: | Will you be needing more? |
| **UM6238**: | No, because the thing is that was not for me. That was for my cousin from Boston [ph] |
| **VALDEZ**: | Alright, let me know. |
| **UM6238**: | He left me 1600, he sent you this upfront and... |
| **VALDEZ**: | No problem. |
| **UM6238**: | The thing is he said that it got moist. |
| **VALDEZ**: | Uhuh? |

| **UM6238**: | I found that strange. What does he mean moist? |
| **VALDEZ**: | Yes, it is kind of wet. |
| **UM6238**: | Oh okay. |
| **VALDEZ**: | Yes, that's the good stuff. |
| **UM6238**: | Alright, we can talk when I see you. |
| **VALDEZ**: | Okay. |

Based on this conversation, I believe UM6238 called VALDEZ-AYBAR to advise him that he had $1600 for him. I believe this $1600 was a payment for drugs provided by VALDEZ-AYBAR, and when VALDEZ-AYBAR asked if UM6238 needed more product UM6238 responded that he did not. UM6238 then explained that the third party "said that it got moist," which I believe is a reference to the consistency of the drugs purchased from VALDEZ-AYBAR.

22.     I believe that location information obtained from **TT-6** and **TT-7**, when used in conjunction with surveillance and the Title III intercepts may assist the United States in allowing investigators to identify and conduct surveillance at location(s) where DELACRUZ-DIAZ and VALDEZ AYBAR conduct their drug sales, and store bulk drugs. Furthermore, agents believe that the location information could help to identify drug associates, sources of supply, and help to better understand the daily operations of the drug trafficking organization.

23.     In my training and experience, I have learned that T-Mobile USA is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they provide service: (1) E-911 Phase II data, also

known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise than E-911 Phase II data.

24.     Based on my training and experience, I know that T-Mobile USA can collect E-911 Phase II data about the location of **TT-6** and **TT-7**, including by initiating a signal to determine the location of **TT-6** and **TT-7** on T-Mobile USA networks or with such other reference points as may be reasonably available.

25.     Based on my training and experience, I know that T-Mobile USA can collect cell site data about **TT-6** and **TT-7**.

## III.   <u>AUTHORIZATION REQUEST</u>

26.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

27.     I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 90 days after the collection authorized by the warrants has been completed.  There is reasonable cause to believe that providing immediate notification of the warrants may have an adverse result, as defined in 18 U.S.C. § 2705.  Providing immediate notice to the user(s) of **TT-6** and **TT-7** would seriously jeopardize the ongoing investigation, as such a disclosure would give this person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a (b)(1).  As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property.  *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above.  *See* 18 U.S.C. § 3103a(b)(2).

28.     I further request that the Court direct T-Mobile USA to disclose to the government any information described in Attachment B that is within the possession, custody, or control of T-Mobile USA.  I also request that the Court direct T-Mobile USA to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with T-Mobile USA's services, including by initiating a signal to determine the location of the **TT-6**

and **TT-7** on T-Mobile USA's networks or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate T-Mobile USA for reasonable expenses incurred in furnishing such facilities or assistance.

29.    I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the **TT-6** and **TT-7** outside of daytime hours.

I declare that the foregoing is true and correct.


/s/ Joseph DeWitt
Joseph DeWitt, Task Force Officer
U.S. Drug Enforcement Administration


The affiant appeared before me by telephonic conference on this date pursuant to Fed. R. Crim. P. 4.1 and affirmed under oath the content of this affidavit and application.

Date: **Oct 23, 2020**

Time: **2:08 PM, Oct 23, 2020**

HON. ANDREA K. JOHNSTONE
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF NEW HAMPSHIRE

16

## ATTACHMENT A

### Property to Be Searched

1.       The cellular telephone assigned call number **(978) 828-4247**
subscribed to Cristobal Emilio Ramirez Cruz at 340 Lowell Street, Lawrence, MA
with service provided by T-Mobile, a wireless telephone service provider
headquartered at 4 Sylvan Way, Parsippany, New Jersey, and used by Manuel
Emilio Delacruz-Diaz.

2.       The cellular telephone assigned call number **(346) 348-8479** with no
listed subscriber or address, with service provided by T-Mobile USA, and used by
Francisco Valdez-Aybar (together "the Target Telephones").

3.       Information about the location of the Target Telephones that is within
the possession, custody, or control of T-Mobile USA including information about the
location of the cellular telephones if either or both is subsequently assigned a
different call number.

# ATTACHMENT B

## Particular Things to be Seized

All information about the location of the Target Telephones described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of the Target Telephones" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephones described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of T-Mobile USA, T-Mobile USA is required to disclose the Location Information to the government.  In addition, T-Mobile USA must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with T-Mobile USA's services, including by initiating a signal to determine the location of the Target Telephones on T-Mobile USA's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government.  The government shall compensate T-Mobile USA for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property.  In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information.  *See* 18 U.S.C. § 3103a(b)(2).